636 A.2d 1146

David A. NOBERS, Robert R. Campbell, Jr., Gasper P. Porto, and Gary T. Weekley, individually and on Behalf of Themselves and all Others Similarly Situated, Appellants,

v.

CRUCIBLE, INC., a Corporation, and Colt Industries, Inc., a Corporation.

Superior Court of Pennsylvania.

Argued Sept. 21, 1993.

Filed Jan. 19, 1994.

Gregory Gleason, Pittsburgh, for appellants.

William H. Powderly, III, Pittsburgh, for appellees.

Before ROWLEY, President Judge, and TAMILIA and JOHNSON, JJ.

ROWLEY, President Judge.

Are the claims stated by plaintiffs/appellants David A. Nobers et al., former employees of appellee Crucible, Inc. ("Crucible"), at its Midland, Pennsylvania, plant,[1] in their action for breach of an employment contract against Crucible and its parent company, appellee Colt Industries, Inc. ("Colt"), so related to an employee benefit plan as to be pre-empted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq.? Concluding that they were so related, and that the courts of this Commonwealth therefore lacked subject matter jurisdiction over appellants' action, the trial court, in an order entered February 16, 1993, granted judgment on the pleadings in favor of appellees. This timely appeal followed. For the reasons set forth below, we conclude

1. Crucible is now Colt Industries Operating Corporation.

that the trial court's resolution of this, appellants' sole issue, was correct. Accordingly, we affirm the order granting appellees' motion for judgment on the pleadings.

At the heart of appellants' action is the claim that when they were promoted from unionized positions to non-union managerial or supervisory positions at the Midland plant, they were promised, orally or impliedly, that if laid off they would have the right to return to their collective bargaining unit or to be treated as a member of the bargaining unit on layoff status. During the course of Crucible's closing of the Midland plant, all of the named appellants were laid off or discharged, and none was permitted to return to the bargaining unit or to maintain laid-off status in the unit. Appellants contend that this alleged breach of an oral or implied agreement deprived them of greater unemployment, pension, and insurance benefits than they are entitled to receive as salaried, non-union employees.

The procedural history of this case, which is both lengthy and complicated, is summarized in the trial court's opinion of February 16, 1993, and we will mention only so much of that history as is essential to an understanding of this appeal. Appellants first attempted to bring an action in federal court, with jurisdiction premised on ERISA, the federal Labor Management Relations Act, and the federal Declaratory Judgment Act. When that action (*"Nobers I"* ) was eventually dismissed, appellants filed the present action (*"Nobers II"* ) in the Court of Common Pleas of Beaver County, stating common law breach of contract claims and requesting class certification. Appellees' attempt to have the case removed to federal court proved unavailing, as did the action for injunctive relief which appellees filed in federal court to have the present action barred on grounds of res judicata.

At the same time as the filing of their ultimately unsuccessful federal action, appellees filed preliminary objections in the nature of a demurrer in the Court of Common Pleas of Beaver County, contending that appellants' action was barred by the doctrine of res judicata. They followed this with amended preliminary objections in which they asserted, as an additional

basis for dismissal of the complaint, that the parties had stipulated that appellants' action against Colt was for Colt's alleged tortious interference with Crucible's contractual relationship with appellants. This common law claim of tortious interference, they argued, was solely cognizable under Section 510 of ERISA, and appellants' action was therefore preempted by Section 514 of ERISA and subject to dismissal for that reason.

Section 514(a) of ERISA states in pertinent part that the statute's provisions "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any [ERISA-covered] employee benefit plan...." 29 U.S.C. § 1144(a) (emphasis added). The trial court concluded that "[b]ecause [appellants'] claim for damages goes directly to the establishment of a benefit plan, [appellants'] claim does 'relate to' an employee benefit plan, therefore, it is pre-empted by ERISA and we are ... without jurisdiction to entertain the matters raised" (Trial Court Opinion, 8/7/87, at 7). Accordingly, in an order entered August 7, 1987, the trial court granted appellees' preliminary objections as to jurisdiction and dismissed the action.

Appellants appealed to this Court. In a decision filed July 25, 1988, this Court reversed. *Nobers v. Crucible, Inc.*, 376 Pa.Super. 156, 545 A.2d 367 (1988), *alloc. denied*, 522 Pa. 578, 559 A.2d 39 (1989). Relying on its earlier opinion in *Shaw v. Westinghouse Electric Corporation*, 276 Pa.Super. 220, 419 A.2d 175 (1980), this Court concluded that the issue was whether appellees were liable for breach of an employment contract; that the factfinder's resolution of this issue would affect only the rights and liabilities of the plaintiffs and the corporate defendants, not those of the plaintiffs and the employee benefits plans; and finally that "[t]he association between the suit and the plans being tangential at best, we fail to see how ERISA is any more than incidentally involved, a factor which counsels against us concluding that the plaintiffs' claim is pre-empted by ERISA." *Id.* 376 Pa.Super. at 165, 545 A.2d at 371. For those reasons, this Court reversed the trial court's order granting appellees' preliminary objections

and dismissing appellants' action. After our Supreme Court denied allocatur, appellees attempted for the second time to remove the case to federal district court, but were again unsuccessful.

On November 20, 1992, appellees moved for judgment on the pleadings, asserting once again that appellants' claims were pre-empted by ERISA and that subject matter jurisdiction over them therefore lay exclusively with the federal courts. Because the lack of subject matter jurisdiction may be raised at any time, Pa.R.C.P. 1032(2); *Encelewski v. Associated–East Mortgage Company,* 262 Pa.Super. 205, 210, 396 A.2d 717, 719 (1978), appellees were not barred from raising the issue a second time. In support of their argument, they cited two decisions, *Ingersoll–Rand Company v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (*"Ingersoll–Rand"*), and *1975 Salaried Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers,* 968 F.2d 401 (3d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1066, 122 L.Ed.2d 370 (1993) (*"Retirement Plan"*), that had not yet been handed down when this Court reached its earlier decision in the present case. The trial court, for reasons that are carefully explained in its opinion of February 16, 1993, agreed with appellees that these intervening decisions were controlling and, accordingly, granted appellees' motion for judgment on the pleadings. It is this decision that appellants have asked us to review.

■ In an appeal from an order entering judgment on the pleadings, our scope of review is plenary, and we are required to determine whether "the [trial court's] action ... was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury." *Kosor v. Harleysville Mutual Insurance Company,* 407 Pa.Super. 68, 72, 595 A.2d 128, 129–30 (1991). Appellants contend that because there are legally significant distinctions between *Ingersoll–Rand* and *Retirement Plan,* on the one hand, and the present case, on the other hand, the former decisions do not control the outcome of the latter. They maintain that this

Court's earlier opinion in this action remains the law of the case and must be reaffirmed.

To evaluate appellants' claims, we turn to the cited cases. The issue before the United States Supreme Court in *Ingersoll–Rand* was whether ERISA "pre-empts a state common law claim that an employee was unlawfully discharged to prevent his attainment of benefits under a plan covered by ERISA." *Id.* 498 U.S. at 135, 111 S.Ct. at 481. Noting that the pre-emption clause of Section 514(a) is conspicuously broad, the Court stated that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan," *id.* at 139, 111 S.Ct. at 483 [quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)]. Applying this definition, the Court concluded that:

> the cause of action which the Texas Supreme Court recognized here—a claim that the employer wrongfully terminated plaintiff primarily because of the employer's desire to avoid contributing to or paying benefits under the employee's pension fund—"relate[s] to" an ERISA-covered plan within the meaning of § 514(a), and is therefore pre-empted.

*Id.*

Appellants assert that *Ingersoll–Rand* is inapposite because the liability of the defendants in that case depended upon the existence of a benefits plan, while in the present case "liability turns upon the existence of a contract of employment and whether or not the Appellees breached that contract" (Brief for Appellants at 10). Regardless of whether a benefits plan existed, appellants argue, they would have had a cause of action under state law. To support their contention that the pre-emptive effect of ERISA does not extend to a case such as theirs, appellants cite *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), for the proposition that "only state laws that relate to benefit plans are preempted" (Brief for Appellants at 11).

Our interpretation of *Ingersoll–Rand* is guided by that of the Third Circuit Court of Appeals in *Retirement Plan.* The

plaintiffs/appellants in that case were five benefit plans for Crucible employees. They went to federal court seeking a declaratory judgment concerning their obligations to defendants/appellees, who are also the named plaintiffs in the present action (i.e., *Nobers II*), as well as an injunction barring defendants/appellees from proceeding with the present action. Relief of that type is barred by the federal Anti–Injunction Act unless the request falls under one of three exceptions, one of which is "where necessary in aid of [the federal court's] jurisdiction," 28 U.S.C. § 2283. In considering whether the requested injunction fell within that exception, the Third Circuit Court of Appeals concluded that:

> the claim in *Nobers II* depends on the existence of an ERISA plan. If an ERISA plan did not exist, the appellees would never have brought *Nobers II*. Furthermore, the trial court's inquiry in *Nobers II* would be directed to ERISA plans, in that the calculation of damages would involve construction of ERISA plans.... The appellees place great emphasis on the fact that *Nobers II* is a suit against an employer, not ERISA plans or their administrators. But that defense is unavailing after *Ingersoll–Rand*, which concluded that ERISA preempted a suit against an employer.
>
> In sum, *Nobers II* "relates to" an ERISA plan and is accordingly preempted by ERISA section 514(a), 29 U.S.C. § 1144(a). Moreover, ... even if *Nobers II* had been properly brought under ERISA, federal jurisdiction over the appellees' claim would have been exclusive.

*Id.* at 406–7 (footnotes omitted). The Court of Appeals also noted that *Fort Halifax Packing*, relied upon by appellants in the case before us, was easily distinguishable because the Maine severance pay statute at issue in that case did not "relate to" employee benefit plans, whereas in the case before the Court "a plan most certainly exists, and the appellees measure their damages in *Nobers II* by reference to that plan." *Id.* at 406 n. 2. Nevertheless, because plaintiffs/appellants had failed to show "that an injunction of *Nobers II* is necessary in aid of the district court's jurisdiction over the

very case before it: the plans' declaratory judgment action," *id.* at 408, the Court of Appeals concluded that an injunction did not lie under § 2283.[2] The Court of Appeals summarized its decision as follows:

> In sum, the Pennsylvania court's assumption of jurisdiction over *Nobers II* is in violation of ERISA's supersedure provisions, but an injunction does not lie simply because of that fact. Instead, we must assume that the state courts will faithfully follow federal law. On that score, we note that the preemption issue here was not definitively resolved until *Ingersoll–Rand,* which was decided *after* the Pennsylvania Superior Court had ruled that *Nobers II* was not preempted. Perhaps the Pennsylvania trial and intermediate appellate courts will now reconsider their holding. If not, then the proper avenue of redress is appeal through the state court system, and ultimately, if necessary, to the United States Supreme Court.

*Id.* at 408 (emphasis in original; citation omitted).

The Third Circuit's opinion in *Retirement Plan,* if we choose to apply the conclusions reached therein, disposes of appellants' challenge to the trial court's ruling in the case before us. Appellants contend that the Third Circuit was not presented with, and did not need to decide, the pre-emption issue and that the Third Circuit's "analysis of this [i.e., the present] case, at some distance, cannot be dispositive of the issues in this matter" (Brief for Appellant at 9).

We disagree. As the Third Circuit explained:

> The plans contend that the subject matter of *Nobers II* is, under ERISA section 502(e)(1), 29 U.S.C. § 1182(e)(1), subject to exclusive federal jurisdiction, and therefore the requested injunction falls under the second exception to the Anti–Injunction Act because it is necessary in aid of the district court's (exclusive) jurisdiction over claims of this sort. We must first determine whether federal courts have exclusive jurisdiction over the claims in *Nobers II;* if so, we

2. The Court of Appeals reached the same result with regard to the remaining two exceptions to the Anti–Injunction Act.

must then determine whether, as the plans claim, that is sufficient to invoke the "necessary in aid of its jurisdiction" exception.

*Id.* at 405–6 (emphasis added). The Third Circuit's explanation indicates that the pre-emption question was an integral part of its analysis of the issue before it.

■ Moreover, as the trial court points out, where the Third Circuit has spoken on a federal question, the ultimate answer to which has not yet been provided by the United States Supreme Court, it is appropriate that we follow the Third Circuit's decision. To do otherwise would suggest that a disappointed litigant

need only ... "walk across the street" to gain a different result. Such an unfortunate situation would cause disrespect for the law.... Finality of judgments would become illusory, disposition of litigation prolonged for years, the business of the courts unnecessarily clogged, and justice intolerably delayed and frequently denied.

*Commonwealth v. Negri,* 419 Pa. 117, 122, 213 A.2d 670, 672 (1965).[3]

■ Finally, we agree with the Third Circuit that the present action "relates to" an ERISA plan and in fact would not have been brought but for the existence of such a plan. In their complaint appellants allege the following damages: 1) lost supplemental unemployment benefits as calculated in the Supplemental Unemployment Benefit Plan attached as Exhibit A, which sets forth plan participants' rights and protections under ERISA; 2) lost immediate pension benefits and lost pension benefits in the event of a plant closing, both of which are described in Exhibit B, a pension agreement that is "a defined benefit plan under [ERISA]" (Exhibit B at 2); and 3) lost insurance benefits as described in Exhibit C, a program of insurance benefits that is "a welfare benefit plan as defined by ERISA" (Exhibit C at 1). From the stipulation of facts that is

---

**3.** Although *Commonwealth v. Negri* is, as we read it, a plurality opinion, the proposition cited here was supported by a majority of the Court.

signed by counsel for both parties and attached to appellees, amendment to their preliminary objections, we learn that

Counsel [for plaintiffs/appellants] . . . agreed that the action against Colt, due to Colt's status as sole shareholder of [Crucible], was for tortious interference by causing [Crucible] to discharge Plaintiffs **rather than enabling them to obtain various pension and welfare plan benefits by reason of being returned to the bargaining unit.**

Stipulation of Facts at 7 (emphasis added). In *Jacques v. Akzo International Salt, Inc.,* 422 Pa.Super. 419, 619 A.2d 748 (1993), this Court, citing *Ingersoll–Rand,* held that a claim of wrongful discharge in order to deprive the employee of pension benefits was pre-empted by ERISA. Such a claim is similar to that stated by appellants in the case before us.

We conclude, therefore, that there was neither an error of law by the trial court nor facts disclosed by the pleadings which should be allowed to go to a jury. Accordingly, we affirm the order granting judgment on the pleadings to appellees.

Order affirmed.